**UNITED STATES of America,**
**Appellee,**

v.

**William Joseph MARTELL, Appellant.**

**No. 9280.**

United States Court of Appeals
Fourth Circuit.

Argued April 20, 1964.

Decided Aug. 10, 1964.

James J. Booker and Lafayette Williams, court-assigned counsel, Winston-Salem, N. C., for appellant.

Roy G. Hall, Jr., Asst. U. S. Atty. (William H. Murdock, U. S. Atty., on brief), for appellee.

Before SOBELOFF, Chief Judge, BOREMAN, Circuit Judge, and CRAVEN, District Judge.

SOBELOFF, Chief Judge.

Upon his plea of guilty to a charge of kidnapping, William Joseph Martell was sentenced to imprisonment for a term of 40 years. This appeal challenges the jurisdiction of the District Court on the ground that the indictment did not satisfy the requirements of Rule 7(c) of the Federal Rules of Criminal Procedure.[1]

The indictment charged that:

"On or about July 28, 1963, WILLIAM JOSEPH MARTELL, by force and violence, with the use of a pistol, and without the consent of Paul Vincent Sheehan, did, in the commission of the offense of the theft of an automobile belonging to the said Paul Vincent Sheehan, unlawfully seize, confine, kidnap, abduct and carry away Paul Vincent Sheehan from Auburn, in the State of New York, to near Mount Pleasant, in the State and Middle District of North Carolina, and did fail to release the said Paul Vincent Sheehan, within twenty-four hours after he had been unlawfully seized, confined, kidnaped, abducted and carried away, in violation of 18 U.S.C. 1201 (a) (b)."[2]

Recognizing that an indictment need not use the exact words of the statute, Martell argues, however, that this particular indictment departed from the language of the kidnapping statute in so many ways that it should be struck down. Specifically, he points out the indictment did not charge that he "knowingly" committed the offense, or that the victim was "transport[ed] in interstate commerce," or that the victim was "held for ransom or reward or otherwise."

 An indictment must use either the terms of the statute *"or words of similar import."* Finn v. United States, 256 F.2d 304, 306 (4th Cir. 1958). The absence of the word "knowingly" is not fatal, for the facts recited in the indictment necessarily imply knowledge. Wheatley v. United States, 159 F.2d 599 (4th Cir. 1946); Finn v. United States, supra. The same principle applies to the failure of the indictment to allege transportation in interstate commerce. It

---

1. Rule 7(c), Fed.R.Crim.P.:
 "The indictment or the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged. * * *"

2. 18 U.S.C.A. § 1201(a) (b) reads as follows:
 "(a) Whoever knowingly transports in interstate or foreign commerce, any person who has been unlawfully seized, confined, inveigled, decoyed, kidnaped, abducted, or carried away and held for ransom or reward or otherwise, except, in the case of a minor, by a parent thereof, shall be punished * * * (2) by imprisonment for any term of years or for life, if the death penalty is not imposed.
 "(b) The failure to release the victim within twenty-four hours after he shall have been unlawfully seized, confined, inveigled, decoyed, kidnaped, abducted, or carried away shall create a rebuttable presumption that such person has been transported in interstate or foreign commerce."

charges that Martell carried the victim "from Auburn, in the State of New York, to near Mount Pleasant, in the State * * * of North Carolina." Plainly these words charge an interstate transportation.

■ Nor would the inclusion of the words "held for ransom or reward or otherwise" have added anything to the sufficiency of the indictment. Clinton v. United States, 260 F.2d 824 (5th Cir. 1958). While it did not use the word "held," it charged that Martell seized and confined the victim and "did fail to release" him. The Supreme Court has recently declared that the statute is violated regardless of the ultimate purpose of the kidnapper. United States v. Healy, 376 U.S. 75, 84 S.Ct. 553, 11 L.Ed.2d 527 (1964). See also Gooch v. United States, 297 U.S. 124, 56 S.Ct. 395, 80 L.Ed. 522 (1936). This being so, use of the statutory language, "ransom or reward or otherwise," was not necessary.[3]

■ While we perceive no reason why the draughtsman could not have followed the statutory language more closely, we cannot say that the deviations make the indictment defective. Hagner v. United States, 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861 (1932). The indictment uses words of similar import to the statutory terms, Finn v. United States, supra, and satisfies the requirement of Rule 7 of the Federal Rules of Criminal Procedure by embodying a "statement of the essential facts constituting the offense charged."

■ The appellant further contends that the imprisonment for 40 years is unduly harsh and amounts to cruel and unusual punishment. Where the sentence is within the limit set by the statute, we are barred, except in the most exceptional circumstances, from any inquiry we might otherwise be inclined to make. Tincher v. United States, 11 F.2d 18 (4th Cir. 1926); Carpenter v. United States, 280 F. 598, 601 (4th Cir. 1922).

■ United States v. Wiley, 278 F.2d 500 (7th Cir. 1960), is an example of exceptional circumstances. There the Circuit Court, in reducing the sentence, predicated its action, not on the severity of the sentence, but on the fact, disclosed by the District Court in sentencing Wiley, that a harsher sentence was imposed only because he had pleaded not guilty and stood trial, while his co-defendants, who were more deeply involved but had pleaded guilty, were dealt with more leniently. The instant case presents no such exceptional circumstance.

More than once the Supreme Court has disclaimed the power to reduce sentences on appeal. In Blockburger v. United States, 284 U.S. 299, 305, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), the Court said "[u]nder the circumstances, so far as disclosed, it is true that the imposition of the full penalty of fine and imprisonment upon each count seems unduly severe; but there may have been other facts and circumstances before the trial court properly influencing the extent of the punishment. In any event, *the matter was one*

---

3. The Supreme Court in Gooch v. United States, 297 U.S. 124, 56 S.Ct. 395, 80 L. Ed. 522 (1936), cited and quoted the Senate and House Judiciary Committee Reports as authoritative interpretations of the words "or otherwise" as used in the Act. The Senate Judiciary Committee Report stated that "[t]he object of the addition of the word 'otherwise' is to extend the jurisdiction of this act to persons who have been kidnaped and held, not only for reward, but for *any other reason*." (Emphasis added). S.Rep. 534, 73d Cong., 2d Sess., March 22, 1934.

The House Judiciary Committee's Report gives an equally broad interpretation of the phrase "or otherwise":

"This bill, as amended, proposes three changes in the act known as the 'Federal Kidnaping Act.' First, it is proposed to add the words 'or otherwise, except, in the case of a minor, by a parent thereof.' This will extend Federal jurisdiction under the act to persons who have been kidnaped and held, not only for reward, but for *any other reason*, except that a kidnaping by a parent of his child is specifically exempted * * *." (Emphasis added). H.Rep. 1457, 73d Cong., 2d Sess., May 3, 1934.

*for that court,* with whose judgment there is no warrant for interference on our part." (Emphasis added). And, as recently as 1958, the Court in Gore v. United States, 357 U.S. 386, 393, 78 S. Ct. 1280, 1285, 2 L.Ed.2d 1405 (1958), said: "Whatever views may be entertained regarding severity of punishment, whether one believes in its efficacy or its futility, * * * these are peculiarly questions of legislative policy. Equally so are the much mooted problems relating to the power of *the judiciary* to review sentences. * * * *This Court* has no such power." (Emphasis added).

While the foregoing expressions particularly emphasize the Supreme Court's lack of power to revise sentences, the language is not restricted to that court alone, but applies literally and in spirit to the courts of appeals as well. Lower appellate courts, for their part, have consistently disavowed such power. See, e. g., Martin v. United States, 317 F.2d 753 (9th Cir. 1963); Egan v. United States, 268 F.2d 820 (8th Cir. 1959); Hess v. United States, 254 F.2d 578 (8th Cir. 1958); United States v. Rosenberg, 195 F.2d 583, 603 (2d Cir. 1952); Hemans v. United States, 163 F.2d 228 (6th Cir. 1947); Scala v. United States, 54 F.2d 608, 611 (7th Cir. 1931). Cf. Yates

v. United States, 356 U.S. 363, 78 S.Ct. 766, 2 L.Ed.2d 837 (1958). The case of Gurera v. United States, 40 F.2d 338, 340–341 (8th Cir. 1930), summarizes the present rule in the federal courts: "If there is one rule in the federal criminal practice which is firmly established, it is that *the appellate court* has no control over a sentence which is within the limits allowed by a statute." (Emphasis added).

Appellate review of sentences, however, is not a new concept.[4] Indeed, from 1879 until 1891, when appellate jurisdiction was transferred from the federal circuit courts to the circuit courts of appeals, the old circuit courts had and exercised express statutory authority to reduce legal but excessive sentences.[5] A number of states[6] and the military,[7] as well as England,[8] Canada,[9] India[10] and Pakistan[11] allow appeals from sentences. The United States stands alone in allowing a single judge to set the minimum sentence according to his own dictate.[12]

The sentencing process inevitably reflects to a greater or lesser degree the individual judge's philosophy of criminal law. It may be argued that just as appellate judges are expected to fashion a composite view in other fields of law, they should have power to develop a more

4. Appellate Review of Sentences (A Symposium at the Judicial Conference of the United States Court of Appeals for the Second Circuit, Manchester, Vermont). 32 F.R.D. 249 (1963); Hall, "Reduction of Criminal Sentences on Appeal," 37 Col.L.Rev. 521, 762 (1937); Note, "Appellate Review of Primary Decisions: A Connecticut Case Study," 69 Yale L.J. 1453 (1960).

5. 20 Stat. 354.

6. State v. Killiam, 91 Ariz. 140, 370 P.2d 287 (1962); Brown v. State, 34 Ark. 232 (1879); State v. Tirella, 22 Conn. Sup. 25, 158 A.2d 602 (1959); Hawaii Rev.Laws §§ 212–14 (1955); State v. Constanzo, 76 Idaho 19, 276 P.2d 959 (1954); State v. Marcus, 240 Iowa 116, 34 N.W.2d 179 (1948); Mass.Ann.Laws, ch. 278, §§ 28 A–D (1956); Satterfield v. State, 172 Neb. 275, 109 N.W.2d 415 (1961); State v. Johnson, 67 N.J.Super. 414, 170 A.2d 830 (1961); People v.

Greer, 3 A.D.2d 980, 162 N.Y.S.2d 504 (1957); Ratcliff v. State, Okl.Cr., 289 P.2d 152 (1955); Commonwealth v. Elliot, 371 Pa. 70, 89 A.2d 782 (1952).

7. 10 U.S.C.A. § 866(c) gives military boards of review the power to modify sentences on appeal. See Fowler v. Wilkinson, 353 U.S. 583, 77 S.Ct. 1035, 1 L. Ed.2d 1054 (1957); United States v. Bigger, 2 U.S.C.M.A. 297, 8 C.M.R. 97 (1953).

8. 7 Edw. VII, c. 23 (1907). Vanderbilt, "Work of England's Court of Criminal Appeal," 12 Wash.L.Rev. 52 (1937).

9. Canadian Criminal Code §§ 583, 584.

10. Indian Code of Criminal Procedure §§ 417, 418.

11. Pakistan Code of Criminal Procedure §§ 417, 418.

12. George, "An Unsolved Problem: Comparative Sentencing Techniques," 45 A. B.A. Journal 250, 251 (1959).

uniform approach to the sentencing problem, and that a sentence should be subject to review to the same extent as other exercises of legal discretion, to make correction in the occasional instances of clear abuse. In Congress strong efforts are afoot to grant federal courts of appeals the power to modify sentences in addition to their existing power to review the record for errors of law.[13] But, however persuasive we may consider the arguments in favor of such legislation, it is not our province to anticipate the Congress.

Affirmed.

13. A bill by Senator Hruska, S. 823, is under consideration in the Senate Judiciary Committee.