SEXTON, Judge Pro Tem.
| defendant, Johnathan C. Thomas, was convicted of armed robbery after a jury trial. He was subsequently sentenced to 26 years at hard labor without the benefit of parole, probation or suspension of sentence. Defendant now appeals. For the reasons stated herein, Defendant’s conviction is affirmed; however, Defendant’s sentence is vacated and the matter is remanded for resentencing in accordance with this opinion.

FACTS

On April 17, 2009, Stewart Carson was seriously injured when he was brutally attacked in the parking lot of Sam’s Town Casino in Shreveport, Louisiana, as he returned to his vehicle after gambling. According to Mr. Carson, he left the casino around 1:15 a.m. and got on the parking garage elevator to return to his Avalanche truck. Mr. Carson recalled being joined on the elevator by Defendant, with whom he engaged in friendly conversation. Mr. Carson further recalled approaching his truck and pressing the remote to unlock the vehicle just before an assailant struck him in the back of the head. When he regained consciousness, Mr. Carson found himself lying in a pool of blood and unable to get to his feet except by using a parked car as a crutch to hold himself up. Mr. Carson’s wallet, cell phone and truck keys had been taken and his truck had been stolen. His scalp had been detached, his nose broken and his teeth broken as a result of the blows he had received. Fourteen staples were required to reattach Mr. Carson’s scalp.
The first police officer to respond to the emergency call was Corporal Justin Metz-ger of the Shreveport Police Department. Corp. Metzger ^testified that, when he arrived at the scene, he observed an older white male bleeding from the face and head, who was being treated by members of the Shreveport Fire Department. Corp. Metzger saw a “rock or a piece of concrete ... covered in blood” lying on the ground. Photos of the crime scene also show a large rock splattered with blood on the parking garage floor, which Mr. Carson assumed was the weapon with which he had been hit. Mr. Carson informed Corp. Metzger that he had been struck in the back of the head and that, when he regained consciousness, his vehicle was gone. Detective Craig Ivy, also of the Shreveport Police Department, arrived at the scene as Mr. Carson was being loaded into an ambulance.
After contacting casino security, Det. Ivy and Corp. Metzger viewed footage recorded by the casino’s surveillance cameras at the time of the attack. In the surveillance footage, the officers observed Mr. Carson enter an elevator on one floor of the parking garage and descend to another floor where he exited the elevator, but appeared unsure of whether he was on the correct parking level. He then returned to the elevator bank where a black male wearing a cream-colored shirt, blue jeans and a wave cap, identified as Defendant by Mr. Carson at trial, was also waiting for an elevator. On the surveillance footage, the two men appear to engage in conversation as they enter an elevator and descend again to another parking level. Mr. Carson, who was walking with a dis-cernable limp, exited the elevator and De *11 fendant remained behind, apparently watching Mr. Carson. As the elevator doors began to close, Defendant stopped them, walked out of the elevator and began to follow Mr. Carson out of camera view. Two different camera Wangles then show Defendant getting closer to Mr. Carson as he approached a row of parked vehicles. While it is clear from the two camera angles that Defendant was attacking Mr. Carson, what exactly transpired between the parked vehicles is not visible on camera. The footage does, however, show an Avalanche truck driving away from the area of the attack shortly before Mr. Carson appeared, stumbling to his feet from behind a parked vehicle.
The surveillance footage was subsequently aired on Crime Stoppers, which generated a tip leading officers to Defendant. Mr. Carson positively identified Defendant as his assailant in a photo lineup and an arrest warrant was issued. Defendant subsequently turned himself in to the Caddo Correctional Center where officers obtained a post-Miranda taped confession wherein Defendant admitted to hitting Mr. Carson, but could not recall details. Defendant related that he later “woke up” in the Avalanche at an apartment complex on North Market Street in Shreveport.
Defendant was initially charged with attempted first degree murder by bill of information filed on May 27, 2009. On November 15, 2010, the bill was amended to a charge of armed robbery. Defendant elected a jury trial. The State submitted the testimony of Mr. Carson, Corp. Metz-ger and Det. Ivy, the surveillance footage and Defendant’s taped confession. By a non-unanimous verdict of 11-1, the jury convicted Defendant of armed robbery. A post-verdict motion for modification seeking that a lesser verdict be entered was filed by Defendant and denied.
At sentencing, the trial judge noted that Defendant had provided no information for the court to consider on his behalf in imposing sentence. 14The trial judge further noted as an aggravating factor the fact that Defendant had used actual violence and caused significant injury to the victim in the commission of the offense. The trial judge also stated the following:
And, No. 21, other relevant aggravating circumstances, which this Court states as follows: No. 1, notwithstanding the defense counsel’s contention regarding the weight of the evidence, the jury rendered its verdict of guilty as charged. No. 2, although relatively minor, defendant has a criminal history of prior arrests and at least one conviction. No. 3, defendant has steadfastly refused to offer and/or accept a reasonable plea agreement when requested to do so by the Court — or invited to do so by the Court. And, No. 4, defendant never expressed any remorse for his conduct.
As mitigating factors, the trial judge recognized Defendant’s relatively young age of 21 years and the possibility that Defendant was under the influence of an intoxicating substance at the time of the offense. The trial judge then sentenced Defendant to 26 years at hard labor without the benefit of probation, parole or suspension of sentence, said sentence to be served consecutively with any other sentence Defendant is obligated to serve. A subsequent motion to reconsider sentence urging that additional weight be given to mitigating circumstances was denied by the trial judge. This appeal ensued.

DISCUSSION

Assignment of Error Number One (verbatim): A twenty-six year sentence, without benefit of probation, parole or suspension of sentence, for armed robbery, is excessive for this offender in this case.
Defendant argues that the 26-year hard labor sentence imposed by the trial judge *12 is excessive when compared with other similarly situated defendants. Defendant also argues that the trial court improperly considered his exercise of his right to a trial by jury as an aggravating factor.
lfiThe offense of armed robbery carries a sentencing range of not less than 10 years and not more than 99 years, without benefit of parole, probation or suspension of sentence. La. R.S. 14:64(B).
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Lathan, 41,855 (La.App.2d Cir.2/28/07), 953 So.2d 890, writ denied, 07-0805 (La.3/28/08), 978 So.2d 297. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Swayzer, 43,350 (La.App.2d Cir.8/13/08), 989 So.2d 267, writ denied, 08-2697 (La.9/18/09), 17 So.3d 388. The important elements which should be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Ates, 43,327 (La.App.2d Cir.8/13/08), 989 So.2d 259, writ denied, 08-2341 (La.5/15/09), 8 So.3d 581. There is no requirement that specific matters- be given any particular weight at sentencing. State v. |6Shumaker, 41,547 (La.App.2d Cir.12/13/06), 945 So.2d 277, writ denied, 07-0144 (La.9/28/07), 964 So.2d 351.
Second, a sentence violates La. Const. Art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, 01-2574 (La.1/14/03), 839 So.2d 1; State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 01-0467 (La.1/15/02), 805 So.2d 166; State v. Lobato, 603 So.2d 739 (La.1992); State v. Robinson, 40,983 (La.App.2d Cir.1/24/07), 948 So.2d 379; State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864.
In Bordenkircher v. Hayes, 434 U.S. 357, 363-64, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978), the U.S. Supreme Court stated:
To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort, and for an agent of the State to pursue a course of action whose objective is to penalize a person’s reliance on his legal rights is “patently unconstitutional.” But in the “give-and-take” of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution’s offer.
[[Image here]]
While confronting a defendant with the risk of more severe punishment clearly may have a “discouraging effect on the defendant’s assertion of his trial rights, the imposition of these difficult choices [is] an inevitable” — and permissible— “attribute of any legitimate system *13 which tolerates and encourages the negotiation of pleas.” It follows that, by tolerating and encouraging the negotiation of pleas, 17this Court has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor’s interest at the bargaining table is to persuade the defendant to forgo his right to plead not guilty. [Citations omitted.]
This same principle clearly serves as the bedrock for the pve-Bordenkircher opinions from the federal appellate courts holding that an accused cannot be punished by a more severe sentence because he unsuccessfully exercised his constitutional right to stand trial rather than plead guilty. See Thomas v. United States, 368 F.2d 941 (5th Cir.1966); United States v. Martell, 335 F.2d 764 (4th Cir.1964); United States v. Wiley, 278 F.2d 500 (7th Cir.1960).
On the other hand, if a trial judge has agreed to impose a particular sentence pursuant to a plea bargain, this does not restrict him from imposing a more severe sentence if the defendant elects to go to trial and is convicted. The sentencing judge must, nonetheless, comply with constitutional standards, and the sentence should not be increased due to vindictiveness arising from the exercise of the defendant’s right to stand trial. A judge’s disposition to impose a lenient sentence during plea discussions should not be understood as setting a limit for the justifiable sentence under accepted principles of criminal justice. State v. Frank, 344 So.2d 1039 (La.1977).
In the case sub judice, Defendant’s claim that his sentence was constitutionally excessive is simply not borne out by the record before us. As noted above, the sentencing range for armed robbery is 10 to 99 years at hard labor without benefits. The sentence imposed, 26 years, falls on the low end of the sentencing range. When Defendant’s unconscionable conduct, including his surprise attack on a defenseless victim and repeated |sblows to the victim’s head with a rock, is viewed in light of the harm done to society, Defendant’s sentence does not shock the sense of justice, other than perhaps in its leniency. The sentence is neither grossly out of proportion to the seriousness of the offense, nor is it nothing more than a purposeless and needless infliction of pain and suffering.
Defendant’s reliance on the sentences imposed in State v. Jones, 36,553 (La. App.2d Cir.1/29/03), 840 So.2d 7, writ denied, 03-0956 (La.10/3/03), 855 So.2d 309 (ten years at hard labor), and State v. Dilks, 99-971 (La.App. 5th Cir.12/21/99), 750 So.2d 318, writ denied, 00-0703 (La.11/3/00), 772 So.2d 666 (four years at hard labor), in support of the proposition that two similarly situated defendants received far less severe sentences is without merit. While the defendant in State v. Jones, supra, was also convicted of armed robbery, the firearm used in the commission of the robbery was actually wielded by a codefendant. Furthermore, there was conflicting evidence of the defendant’s use of violence towards the victim and no evidence that the defendant’s alleged violence caused any injury to the victim. In State v. Dilks, supra, the defendant was convicted of carjacking and there is no mention that the defendant was armed with a dangerous weapon. Accordingly, the defendants in the two cases relied on by Defendant herein were not similarly situated; and, therefore, a comparison with the sentences imposed on them are neither instructive nor persuasive.
The considerations of the trial judge in the sentencing of Defendant in the instant case is more troubling. This court’s concern centers on the trial *14 | fudge’s express reliance on Defendant’s exercise of his constitutional right to a trial by jury as an aggravating factor influencing his determination of the appropriate sentence.[1] While such an argument has been addressed and rejected on many occasions by this state’s courts, the courts have always been able to point to an absence of any record evidence that such a vindictive motive existed. See State v. Frank, supra; State v. Harris, 10-492 (La.App. 5th Cir.5/24/11), 66 So.3d 1180. In each of these cases, the defendant had chosen not to accept a plea bargain offered by the state under which his sentence would have been lower than the sentence imposed by the trial court after his conviction by a jury. The defendants’ conjecture that this was the result of vindictiveness by the trial courts to punish them for exercising their right to a trial was treated as just that, conjecture. Absent some affirmative evidence in the record to show that the defendant’s sentence was the product of vindictiveness by the trial judge, the reviewing courts have declined to impugn the trial court’s motives.
In the present case, however, the trial judge’s express characterization of Defendant’s refusal to enter into a plea agreement as an “aggravating” factor makes it impossible to conclude that Defendant’s exercise of his right to a jury trial did not play at least some part in the sentence imposed. The trial judge made clear that Defendant’s failure to forgo a jury trial by |10entering into a plea agreement weighed unfavorably in his determination of the appropriate sentence for Defendant. The trial judge’s attempt to so justify the sentence amounts to the imposition of a penalty for exercising the right to trial by jury, which is a constitutionally impermissible consideration.

DECREE

For the foregoing reasons, the conviction of Defendant, Johnathan C. Thomas, is affirmed. Defendant’s sentence is vacated and the matter remanded with instructions to the trial court to order a presentence investigation and to impose an appropriate sentence within the statutory range as is appropriate under the circumstances of the offense and those of Defendant.
CONVICTION AFFIRMED; SENTENCE VACATED AND REMANDED FOR PRESENTENCE INVESTIGATION AND RESENTENCING.
BROWN, Chief Judge, dissents and assigns written reasons.

. We note that La. C. Cr. P. art. 881.1 precludes a defendant from presenting sentencing arguments to the court of appeal which were not presented to the trial court. In such a circumstance, the defendant is simply relegated to having the appellate court consider the bare claim of constitutional excessiveness. State v. Mims, 619 So.2d 1059 (La.1993); State v. Masters, 37,967 (La.App.2d Cir. 12/17/03), 862 So.2d 1121; State v. Duncan, 30,453 (La.App.2d Cir.2/25/98), 707 So.2d 164. In the case sub judice, however, in light of the constitutional magnitude of the issue presented, we will address the argument now made by Defendant in this court.